```
         UNITED STATES DISTRICT COURT
            DISTRICT OF MINNESOTA
          Civil No. 16-2564(DSD/KMM)
```

Ivan J. Grimm,

       Plaintiff,

v.  **ORDER**

Target Corporation,

       Defendant.

    Ivan Grimm, 1413 Holdridge Lane South, Wayzata, MN 55391, plaintiff pro se.

    Matthew E. Damon, Esq. and Nilan Johnson Lewis, PA, 120 South 6th Street, Suite 400, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for judgment on the pleadings by defendant Target Corporation and the motions to amend, exclude unreliable evidence, and defer dispositive judgment by pro se plaintiff Ivan J. Grimm. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion for judgment on the pleadings and denies the remaining motions.

**BACKGROUND**

This whistleblower dispute arises out of Grimm's termination from Target on December 14, 2015. Grimm, an employee of TEKsystems, worked for Target as a contractor from September 2013 to December 14, 2015. Am. Compl. ¶ 8.7; Answer ¶¶ 8.6, 8.7. Grimm worked on a project referred to as "Hashkey" during his tenure at

Target. The Hashkey project, which is still in development, would allow Target to provide relevant offers to its customers when online or using mobile devices. See Answer Ex. B, at 4. Grimm was supervised by Evan Hovorka.

According to Grimm, he first reported wrongdoing by Target on December 1, 2015, when he sent a "white paper" entitled "Assessing The Viability Of Target's Proposed Data Collection And Sharing Activities Within The Context of A Progressively Unfavorable Political Environment" to Hovorka and others at Target. Am. Compl. ¶ 9.4; Answer Ex. O, at 2. Grimm alleges that he discovered "statistical evidence of widespread illegality involving disruption of communications between defendants and attorneys and between attorneys and outside parties in the U.S. Judicial System, as well as possible changes in the political environment, all of which would affect laws regarding data sharing which would affect certain parts of HASHKEY." Am. Compl. ¶ 9.4; see also Answer Ex. O, at 3-6. He further stated that he "personally believe[s] that the collection and sharing of information between Target and its partners is entirely legitimate and should proceed ...." Answer Ex. O, at 3. He noted, however, that the "political environment" would change in the next three to five years leading to a "prohibition of the sharing of information between Target and its partners." Id. He recommended that Target "speed up" Hashkey, rather than "abandon" or "change" it, "so as to derive maximum

benefit ... in advance of the coming prohibition." Id.

The white paper neither alleges nor reports fraudulent conduct by Target, but references, without explanation, the allegedly low success rate of Sarbanes-Oxley whistleblower actions. Id. at 6. Grimm concluded by stating, "It is possible to conclude from the available evidence that there will eventually be changes in the political environment which will eventually negate all of Target's work in collecting and sharing data with its partners. Target must now decide what to do with this information." Id. The record does not indicate if Target responded to the white paper.

On December 8, Grimm sent an email to Hovorka and others complaining about low data quality on the project. Id. Ex. P. The record does not contain a response. Then, on December 11, Grimm sent an email to several Target employees, excluding Hovorka, recommending that Hashkey be restructured due to a "parade of [recent] problems." Id. Ex. Q, at 2. Grimm blamed the problems on the Target team based in India and touted his discovery of the issues. Id. Hovorka, who apparently received a copy of the email, responded later the same day by defending the project and warning Grimm that his placement at Target was in jeopardy. See id. Ex. R, at 1 ("Your attitude has to change dramatically and immediately to continue working here. Let me know your response by Monday."). Hovorka also indicated that Grimm's concerns were not well founded and appeared to be grounded in self promotion: "These are critical

3

improvements that you seem[] to overlook in favor of your [own work]." Id.

Grimm replied soon after, sending an email to another Target employee, Edward Chenard, on which he copied Hovorka. See id. Ex. T. In the email, entitled "Essential Issue," Grimm questioned whether "sharing guest device information with parties outside of Target" is moral, legal, and a wise business decision as it would "[a]t the very least alienate guests." Id. He further questioned whether "something illegal is going on." Id. He specifically cited Target's potential use of the project to allow it to track customers "after they left Target," as a basis of concern. Id. He closed the email by saying, "Please consult with Sarbanes Oxley legislation in crafting your response." Id.

Chenard responded that evening asking Grimm to provide the following information about his allegations: (1) the information Grimm believes Target shares with third parties and the identity of those third parties, (2) the basis for Grimm's claim that Target tracks customers once they leave the store, and (3) the sources for Grimm's information. Id. Ex. U, at 1. At 7:30 a.m. the next business day, and presumably before Grimm could respond to Chenard, Hovorka terminated Grimm's contract with Target, effective immediately. Id. Ex. V. Grimm responded as follows:

> In so far as I quote Sarbanes Oxley Legislation and I assumed the role of whistleblower and referred to my concern of illegal activity in relating to the use of 40,000,000 million American's data, what you are doing is

4

> a violation of the Sarbanes Act. Since it also references illegal activity, firing someone is retaliation which is prohibited by Federal Law. It carries a 5 to 7 year prison term. Do you seriously wish to continue?

Id. Ex. W. As Hovorka escorted him from the building that morning, Grimm threatened to file a Sarbanes-Oxley complaint against Target. Am. Compl. ¶ 9.16.

Thereafter, Grimm apparently requested that TEKsystems place him on another team at Target. Answer Ex. S, at 2. Hovorka explained to TEKsystems that Grimm was not welcome to join any team at Target due to his "attitude and social skills" which "progressively got worse" during his tenure there. Id. at 1. Hovorka cited issues dating back six months. Id.

On December 21, 2015, Grimm filed a complaint against Target with the Occupational Safety and Heath Administration (OSHA), alleging that Target breached the whistleblower provision of Sarbanes-Oxley by terminating him for reporting possibly criminal activity relating to customer data. See Answer Ex. A. Target responded, denying the allegations, and Grimm submitted numerous supplemental filings in support of his position. See id. Exs. B-M. In July 2016, Grimm advised OSHA that he would proceed in federal court rather than pursue his OSHA claim. See id. Ex. M, at 7.

Although the details are hard to discern, Grimm alleges that after his termination, he reported Target to the Securities and Exchange Commission for potential Sarbanes-Oxley violations due to

possibly illegal data sharing through the "reckless" Hashkey project. Am. Compl. ¶¶ 14-15. He does not indicate whether the SEC responded to his report.

On July 15, 2016, Grimm appears to have filed a complaint with the Minnesota Department of Human Rights claiming that Target discriminated and retaliated against him based on his age (63) and national origin (American). Answer Ex. M, at 4-6; see also Am. Compl. ¶ 9.8. The record does not indicate whether the MDHR ever reached a decision, nor does the record establish whether Grimm filed a similar claim with the Equal Employment Opportunity Commission.

Grimm filed this suit on August 1, 2016, followed by a lengthy and dense amended complaint, alleging that Target violated the whistleblower provisions of Sarbanes-Oxley, 18 U.S.C. § 1514A(a)(1), and the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A), by terminating his contract after he complained about illegal activity. Grimm also seems to persist in his claim that Target discriminated against him due to his age and national origin. See Am. Compl. ¶¶ 9.8, 9.10. Grimm seeks $6.66 million in damages. Id. at 5. Target now moves for judgment on the pleadings and Grimm, in turn, moves to amend, exclude unreliable evidence, and defer dispositive judgment.

**DISCUSSION**

I.  **Motion for Judgment on the Pleadings**

   A.  **Standard of Review**

The same standard of review applies to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6). Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside of the pleadings under Rule 12(c). Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are

"necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). In this case, the OSHA filings and related exhibits are necessarily embraced by the pleadings and are properly considered.

**B.   Sarbanes-Oxley Act**

Sarbanes-Oxley prohibits a publicly traded company from terminating an employee[1] in retaliation for reporting "'any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.'" Beacom v. Oracle Am., Inc., 825 F.3d 376, 379 (8th Cir. 2016) (quoting 18 U.S.C. § 1514A(a)(1)(C)). "Only activity 'definitively and specifically relate[d] to one of the six enumerated categories of misconduct ..., i.e. mail fraud, wire fraud, bank fraud, securities fraud, violation of an SEC rule or regulation, or violation of a federal law relating to fraud against shareholders' is protected by [the statute]." Miller v.

---

[1] The court assumes for purposes of the instant motion that Grimm was a Target employee under the broad definition of that term under Sarbanes-Oxley. See 29 C.F.R. § 1980.101(g) ("Employee means an individual presently or formerly working for a covered person, an individual applying to work for a covered person, or an individual whose employment could be affected by a covered person.").

Stifel, Nicolaus & Co., 812 F. Supp. 2d 975, 987 (D. Minn. 2011) (quoting Fraser v. Fiduciary Tr. Int'l, No. 04-6958, 2009 WL 2601389, at *5 (S.D.N.Y. Aug. 25, 2009)).

Sarbanes-Oxley whistleblower claims are analyzed under a burden-shifting framework. Beacom, 825 F.3d at 379. First, the plaintiff must prove by a preponderance of the evidence that: (1) he engaged in protected activity; (2) his employer knew he engaged in protected activity; (3) he suffered an adverse employment action; and (4) the protected activity was a contributing factor in the adverse action.[2]  Id. at 379-80. If the plaintiff meets his burden, "the employer may prove by clear and convincing evidence that it would have taken the same adverse action even if the employee had not engaged in the protected activity." Id. at 380.

"Sarbanes-Oxley requires the employee to hold a reasonable belief that the employer's conduct amounts to fraud against the shareholders." Id. "The employee must subjectively believe the employer's conduct violated a law relating to fraud against shareholders, and the employee's belief must be objectively reasonable." Id. In other words, the plaintiff "must establish that a reasonable person in his position, with the same training

---

[2] As to the last factor, the court only considers the alleged conduct leading to the adverse employment action. Any subsequent conduct lacks the requisite causal nexus between the conduct and the adverse employment action. As a result, the court considers Grimm's allegations of conduct occurring before his termination on December 14, 2015. The court does not consider any conduct thereafter, including Grimm's alleged reports to the SEC.

9

and experience, would have believed [his employer] was committing" fraud. Id. at 381.

Here, Grimm fails to establish a prima facie case of retaliation as a matter of law given his unequivocal admission that he does not believe that Target engaged in fraudulent activity: "I have never, ever claimed that Target was directly engaged in fraud." Pl's. Opp'n Mem. ¶ 29.0. In light of this admission, Grimm cannot establish either that he had a subjective or an objectively reasonable belief that Target was engaged in fraud against its shareholders. Indeed, he admits he held no such belief at all.

Grimm's admission is consistent with his written communications to Target in which he vaguely complained about Target's potential use of private data, but never suggested that Target was engaged in fraud of any kind against its shareholders or anyone else. To the contrary, the white paper, for example, encourages Target to speed up the Hashkey project to avoid curtailment by potential changes in the political environment. The document cannot be reasonably interpreted to be even a veiled report of wrongdoing by Target against its shareholders. Grimm's subsequent communications are similarly lacking. The December 8 email and responses reflect nothing more than Grimm's complaints about the quality of other employees' work. The "Essential Issue" email comes the closest to raising an issue about potential

illegalities, but it is focused on the propriety of data sharing. In the email, Grimm does not expressly or impliedly complain that Target is engaged in fraud of any kind. Absent a report of fraudulent conduct, the email cannot be considered a report of a Sarbanes-Oxley violation as a matter of law. Miller, 812 F. Supp. 2d at 987. Grimm's out-of-context references to Sarbanes-Oxley in some of his communications are insufficient to transform the content of his communications into reports that Target was in violation of Sarbanes-Oxley. Under these circumstances, the Sarbanes-Oxley claim must be dismissed.

    **C.  Dodd-Frank Act**

The Dodd-Frank Act prohibits an employer from discharging a whistleblower for "making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002." 15 U.S.C. § 78u-6(h)(1)(A)(iii). Here, because Grimm did not make a disclosure protected under Sarbanes-Oxley, his claim under Dodd-Frank likewise fails. Beacom, 825 F.3d at 381.

    **D.  Age Discrimination Claim**

The court must also dismiss the age and national origin discrimination claim because Grimm does not allege that he filed a charge of discrimination with the EEOC before filing suit, as required. See 29 U.S.C. § 626(d)(1)(B)("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the

11

Equal Employment Opportunity Commission."). As a result, Target's motion for judgment on the pleadings is granted.

## II. Motion to Amend

Grimm moves to once again amend his complaint, this time to include a claim under § 1514A(a)(2) of Sarbanes-Oxley, which prohibits retaliation against an employee who:

> file[s], cause[s] to be filed, testif[ies], participate[s] in, or otherwise assist[s] in a proceeding filed or about to be filed ... relating to an alleged violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

"A ... court should freely give leave to a party to amend its pleadings when justice so requires ...; however, it may properly deny a party's motion to amend its complaint when such amendment ... would be futile." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008) (citations omitted). An amendment is futile when it would not survive a motion to dismiss. See In re Senior Cottages of Am., LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (citations omitted) ("[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a [motion to dismiss] ....").

Here, Grimm's amendment would be futile for the same reasons discussed above. Specifically, a claim under § 1514A(a)(2) requires the whistleblower to participate in a proceeding involving

the kinds of fraud enumerated in the statute, particularly fraud against a company's shareholders. That essential element is lacking in this case as a matter of law. Moreover, Grimm's allegations in support of the proposed amendment appear to relate to Target's litigation conduct, rather than its response to Grimm's pre-termination communications. As a result, the motion to amend is denied.

### III. Motion to Exclude Unreliable Evidence

Grimm next moves to exclude the December 11, 2015, email in which Hovorka warned him that he would be terminated if he did not improve his behavior. Even if it were appropriate to consider the admissibility of evidence at this time, the court finds no basis to exclude the email. Hovorka sent the email from his Target account to Grimm's Target account. There is no indication that the email was tampered with or that Grimm did not receive it. Further, the email is not material to the court's analysis above. The motion is denied.

### IV. Motion to Defer Dispositive Judgment

Grimm lastly moves to defer judgment because the case must be decided by a jury. The court disagrees. As discussed above, the amended complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden, 588 F.3d at 594. Under these circumstances, Grimm is not entitled to a jury trial, and the motion is denied.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for judgment on the pleadings [ECF No. 26] is granted;

2. The motion to amend [ECF No. 44] is denied;

3. The motion to exclude unreliable evidence [ECF No. 47] is denied;

4. The motion to defer dispositive judgment [ECF No. 51] is denied; and

5. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 6, 2017

                                          s/David S. Doty  
                                          David S. Doty, Judge  
                                          United States District Court